**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONDAY RESTAURANTS LLC, on behalf of itself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20 CV 767 SNLJ |
| | ) | |
| INTREPID INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| ANDREW DILL, DMD, AMY VARBLE, DMD, AND MICHAEL WONG, DMD, P.C., on behalf of itself and all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:20 CV 1015 SNLJ |
| v. | ) | |
| | ) | |
| TRI-STATE INS. CO. OF MINNESOTA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Monday Restaurants LLC owns two restaurants in the St. Louis area. Consolidated plaintiff Andrew Dill, DMD, Amy Varble, DMD, and Michael Wong, DMD, P.C. is a dental practice in the St. Louis area.  Plaintiffs filed putative class action suits against their insurers, defendants Intrepid Insurance Company and Tri-State Insurance Company of Minnesota, respectively, seeking damages and declarations that their

1

commercial insurance policies covered business income losses and extra expenses caused by the COVID-19 pandemic. Defendants move to dismiss, arguing the plain language of the insurance contracts shows plaintiffs are not entitled to coverage. On plaintiff's motion, the Court consolidated these cases. The Court will now grant both motions to dismiss.

## BACKGROUND

Plaintiffs allege the following facts, which the Court accepts as true. *See Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (per curiam). In March 2020, St. Charles County, Missouri—where plaintiff Monday's restaurants are located—declared a public health emergency due to the rapid spread of the disease COVID-19. In the days that followed, because of the COVID-19 pandemic, government officials advised people to avoid dining in restaurants. Relevant state and county officials issued orders prohibiting on-premises consumption at restaurants and requiring people to stay home except for essential activities, which did not include dining in restaurants. When restaurants were permitted to resume on-premises dining, they were subject to restrictions, including social distancing requirements. St. Charles County continued to discourage people from eating in restaurants to contain the spread of COVID-19. Restaurant sales, including at plaintiff Monday's restaurants, plummeted because of COVID-19 and the related restrictions. Plaintiff Monday made a claim on its insurance policies for loss of business income and extra expenses. Defendant Intrepid had not responded when plaintiff Monday filed this suit, which plaintiff Monday took as a denial.

2

Plaintiff Dill also claims losses resulting from the COVID-19 pandemic.  In March 2020, various authorities recommended dentists take steps to limit the spread of the coronavirus, including limiting their services.  Plaintiff Dill closed its practice in March 2020 due to the pandemic and reopened with a limited schedule in May 2020.  When the CDC issued guidance on resuming non-emergency dental care in May 2020, it recommended specific steps for dentists, including increased protective equipment and screening.  Plaintiff Dill claims loss of income due to its closure and reduction in business plus extra expenses it incurred.  Plaintiff Dill made a claim on its policy, which defendant Tri-State denied.  Plaintiff Dill then filed suit.

Both plaintiffs bring suit on behalf of themselves and various putative classes and subclasses.  They claim breach of contract and breach of the implied covenant of good faith and fair dealing for defendants' non-payment of their claims.

Defendants move to dismiss plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) on two grounds.  First, they argue the policies' "Exclusion of Loss Due to Virus or Bacteria" endorsement applies to exclude plaintiffs' claims because plaintiffs' alleged damages were caused by a virus—the coronavirus.  Second, defendants argue plaintiffs have not alleged a "direct physical loss of or damage to property" caused by a "Covered Cause of Loss," meaning coverage does not apply at all.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If "the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). The Court can consider the insurance policies in deciding the motion. *See Ashford*, 880 F.3d at 992; *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

Where, as here, federal jurisdiction is based on diversity of citizenship, "[s]tate law governs the interpretation of insurance policies." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). The parties agree Missouri law governs. In Missouri, interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). The "'cardinal rule'" for interpretation is to "'ascertain the intention of the parties and to give effect to that intention.'" *Secura*, 670 F.3d at 861 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)). "The parties' intent is presumptively expressed by the plain and ordinary meaning of the policy's provisions, read in the context of the policy as a whole." *Id.* (cleaned up). If the policy is unambiguous, it is "enforced according to its terms." *Schmitz*, 337 S.W.3d at 706. "If the policy is ambiguous, it will be construed against the insurer." *Id.* An ambiguity exists if there is "'duplicity, indistinctness, or uncertainty'" in the meaning of the policy language or if it is "'reasonably open to different constructions.'" *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (quoting *Gulf Ins. Co. v. Noble Broadcast*, 936 S.W.2d 810, 814 (Mo. banc 1997)). "Definitions, exclusions,

4

conditions and endorsements are necessary provisions in insurance policies.  If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007).  It is the insured's burden to establish coverage and the insurer's burden to show that an exclusion to coverage applies.  *Manner v. Schiermeier*, 393 S.W.3d 58, 62-63 (Mo. banc 2013).

## THE POLICIES

Plaintiffs claim coverage for loss of business income and extra expenses under their commercial insurance policies.  The language at issue is the same in all policies.

The Business Income Coverage provisions read:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.

Docs. #75-1 at 50; 75-2 at 53; 76-1 at 89; 76-2 at 117.[1]  "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."  Docs. #75-1 at 64; 75-2 at 67; 76-1 at 101; 76-2 at 129.

Plaintiffs also claim Extra Expense Coverage: "Extra Expense means necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a

---

[1] Because some of plaintiffs' exhibit stamps are obscured, the Court's citations to page numbers in the insurance policies refer to the pagination in the file stamp at the top of the page.

Covered Cause of Loss."  Docs. #75-1 at 50; 75-2 at 53; 76-1 at 89; 76-2 at 117.  The "Period of Restoration" for business income and extra expense coverage begins after the direct physical damage or loss and ends on the earlier of: "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location; or (3) 12 consecutive months after the date of direct physical loss or damage."  Docs. #75-1 at 74-75; 75-2 at 77-78; 76-1 at 36-37; 76-2 at 61-62.

In addition to arguing plaintiffs have not alleged "direct physical loss of or damage to property," defendants claim two exclusions apply.  First, they argue the policies' "Exclusion of Loss Due to Virus or Bacteria" endorsement (the "Virus Exclusion") excludes coverage because plaintiffs' alleged damages were caused by a virus.  The Virus Exclusion reads: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Docs. #75-1 at 62; 75-2 at 65; 76-1 at 100; 76-2 at 128.  Second, defendants point to a loss-of-use exclusion in the policies, which states: "We will not pay for loss or damage caused by or resulting from any of the following . . . b. Delay, loss of use or loss of market."  Docs. #75-1 at 66; 75-2 at 69; 76-1 at 103; 76-2 at 131.

### ANALYSIS

Plaintiffs' amended complaints do not plausibly allege a "direct physical loss of or damage to property" resulting from a "Covered Cause of Loss."  Even if plaintiffs had alleged a claim for coverage, the policies' Virus Exclusion applies.

**1. Plaintiffs have not alleged a "direct physical loss of or damage to property."**

To make a claim for lost business income and extra expenses under their commercial property policies, plaintiffs must show a "direct physical loss of or damage to property at premises" covered by their policies, caused by or resulting from a Covered Cause of Loss. The parties disagree about the meaning of "direct physical loss of or damage to property" and whether the phrase includes plaintiffs' claimed losses. The policies do not define the phrase, so the Court must apply its ordinary meaning. *See Schmitz*, 337 S.W.3d at 708. While plaintiffs alleged the policies cover intangible "damage" to property, plaintiffs do not advance this argument in their briefing, instead conceding that "damage to property" is something that "occurs 'to' the property." *See* Doc. #45 at 13, No. 4:20 CV 767; Doc. #36 at 14, No. 4:20 CV 1015. Plaintiffs do not allege any "damage to" their property. They focus on "loss of" property.

Plaintiffs define loss as "the act of losing possession" and "deprivation." *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F.Supp.3d 794, 800 (W.D. Mo. 2020). Plaintiffs do not allege they ever lost possession of their property. Plaintiff Monday claims it was "deprived of" its dining rooms because the pandemic and government shutdown orders denied it "the ability to physically access and use the property in the normal fashion in its business" and denied "customers the ability to physically access and use the property for dining." Doc. #25 ¶ 86. Plaintiff Dill argues it was "deprived of" its offices "for the purpose of providing dental care," as it alleged the pandemic caused it to lose "the direct ability to physically access and use the property in the normal fashion in their business."

Docs. #22 ¶¶ 107-08 and #36 at 15, No. 4:20 CV 1015.  Plaintiffs allege their losses were "physical" because their inability to use their dining rooms and offices in their normal course and allow customers and patients to access them had "material existence."  Doc. #45 at 14, No. 4:20 CV 767; Doc. #36 at 15, No. 4:20 CV 1015.  Plaintiffs do not allege COVID-19 was ever physically present on their premises or anything physical happened to their covered property.

Plaintiffs' allegations do not fall within the ordinary meaning of "direct physical loss of property."  A plain reading of this phrase requires plaintiffs to allege some *physical* element impacting their property, not just loss of intended use without any physical impact on the property.  *See Ballas Nails & Spa, LLC v. Travelers Casualty Ins. Co.*, -- F.Supp.3d --, 2021 WL 37984 at *3-4 (Jan. 5, 2021).  Other terms in the policies, including the "loss of use" exclusion and the definition of the "period of restoration," support this conclusion. *See id.*; *cf. Secura*, 670 F.3d at 861.  The weight of authority interpreting similar or identical provisions under Missouri law further shows plaintiffs must allege some physical event or physical injury to their property to state a claim for a "direct physical loss."[2]  And, as other decisions have explained, Eighth Circuit case law also supports this conclusion.  *See, e.g.*, *Ballas*, 2021 WL 37984 at *3-4; *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, -- F. Supp. 3d --, 2020 WL 7078735 at *6 (D. Kan. Dec. 3, 2020).  Plaintiffs have not plausibly

---

[2] *See MMMMM DP, LLC v. The Cincinnati Ins. Co.*, 2021 WL 2075565 at *3-4 (E.D. Mo. May 24, 2021) (slip copy); *Seoul Taco Holdings, LLC v. Cincinnati Ins. Co*, 2021 WL 1889866 at *5-6 (E.D. Mo. May 11, 2021) (slip copy); *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Gp. Inc.*, -- F. Supp. 3d --, 2021 WL 598818 at *9 (E.D. Mo. Feb. 16, 2021); *Ballas*, -- F. Supp. 3d --, 2021 WL 37984 at *3-4; *Zwillo V, Corp. v. Lexington Ins. Co.*, -- F. Supp. 3d --, 2020 WL 7137110 at *4 (W.D. Mo. Dec. 2, 2020); *BBMS, LLC v. Cont'l Cas. Co.*, -- F. Supp. 3d --, 2020 WL 7260035 at *6 (W.D. Mo. Nov. 30, 2020).

alleged they were entitled to coverage under their policies, which means they have failed to state claims for defendants' refusal to pay their claims.

## 2. Even if plaintiffs had alleged a covered loss, the policies' Virus Exclusion applies to exclude coverage.

Even if plaintiffs had alleged a claim for coverage, defendants argue the policies' Virus Exclusion excludes coverage because plaintiffs' losses were caused by a virus—the coronavirus that causes the disease COVID-19.  The Virus Exclusion unambiguously excludes coverage for losses caused by disease-inducing viruses.  Plaintiffs' amended complaints allege losses caused by the coronavirus that induces the disease COVID-19.

Contrary to plaintiffs' arguments, that the virus was widespread enough to be classified as a pandemic does not change the fact that the virus caused their losses.  The Court also rejects the argument that the virus was only an "indirect" cause of plaintiffs' losses or that the pandemic and the government action meant to slow the virus's spread were separate, covered causes of loss.  *See Ballas*, 2021 WL 37984 at *6.  Plaintiffs do not provide relevant support for their regulatory estoppel argument or allege any inconsistency between the statements insurance industry groups made to regulators and the position defendants take here.  *See Levy*, 2021 WL 598818 at *7.  Even if plaintiffs had alleged plausible claims for coverage, the Virus Exclusion would exclude coverage.

Accordingly,

IT IS HEREBY ORDERED that defendant Intrepid Insurance Company's motion to dismiss [Doc. #77] is GRANTED.

IT IS FURTHER ORDERED that plaintiff Monday Restaurant LLC's second amended complaint [Doc. #75] is DISMISSED with prejudice.

IT IS FURTHER ORDERED that defendant Tri-State Insurance Company of Minnesota's motion to dismiss [Doc. #78] is GRANTED.

IT IS FURTHER ORDERED that plaintiff Andrew Dill, DMD, Amy Varble, DMD and Michael Wong, DMD, P.C.'s second amended complaint [Doc. #76] is DISMISSED with prejudice.

IT IS FINALLY ORDERED that defendants' prior motions to dismiss plaintiffs' first amended complaints [Doc. #34, No. 4:20 CV 767, and Doc. #29, No. 4:20 CV 1015] are DENIED as moot.

A separate order of dismissal will issue.

Dated this 2nd day of June, 2021.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE